IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SIOBHAN ST. JOHN, | : |
| | : Civil Action No.: 2:25-cv-251 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| THE OHIO STATE UNIVERSITY; CAREY HOYT; and BENJMAIN SCHREIBER, | : |
| | : |
| Defendants. | : **JURY TRIAL DEMANDED** |
| | : |

## COMPLAINT IN CIVIL ACTION

### NATURE OF THE CASE

1. Plaintiff Siobhan St. John ("Plaintiff") brings this action against Defendants, the Ohio State University ("OSU" or "Defendant"), the individual Defendants Carey Hoyt ("Hoyt") and Benjamin Schreiber ("Schreiber") for damages based upon the wrongful and unlawful discrimination and retaliation practiced against her based upon her gender, race, and religious faith and commitment pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. §2000e-2. The Plaintiff also asserts state statutory claims under the Ohio Human Rights Act, Ohio Revised Code § 4112.02 and a common law tort claim for wrongful discharge. She seeks compensatory and punitive damages, including an award of damages for attorneys' fees and costs of suit. She asserts these claims because during her ten (10) years of employment by OSU as an assistant coach of its Cheer Team, she was subjected to persistent unlawful discrimination and harassment on the

basis of race, gender and religious commitment; she complained, and was retaliated against and ultimately terminated from her employment to silence her complaints.

## PARTIES

2. Plaintiff is an adult, African-American female who currently resides in Columbus, Ohio. She is also a devout Christian.

3. Plaintiff was an employee of OSU from July 2014 until she was wrongfully terminated from her employment effective July 22, 2024. As more fully detailed below, Plaintiff's discharge from employment was a blatant act of discrimination and retaliation against her based upon her race, her gender, and her desire to participate in regular religious observance. For ten (10) years prior to her unlawful termination, the Plaintiff had been employed by OSU as an assistant coach of the OSU Cheer Team.

4. Defendant OSU is a public university located at 281 W Lane Avenue, Columbus, Ohio 43210. The Defendant engages in providing higher education to graduate and undergraduate students. It is known as a public land grant university, which is a member of the University System of Ohio. The Defendant is governed by a Board of Trustees, who are appointed by the Governor of Ohio. OSU has more than 65,000 enrolled graduate and undergraduate students. OSU employs over 51,525 individuals, including academic and administrative staff.

5. The Defendant OSU, is organized into various departments for funding, administrative and management purposes. One of its departments is known as the Athletic Department. The Athletic Department organizes, manages, conducts and oversees the Defendant's varsity sports, athletic programs, including its participation in varsity sports competitions. One of the Defendant's varsity teams is the Cheerleading Team, which, in turn, is a part of the OSU "Spirit Program". The Spirit Program is generally engaged in promoting spirit, *inter alia*, by performances in connection with athletic events, including football, basketball, volleyball, and

other varsity sports. The Cheer Team also performs at pep rallies, parades, and other community events. The OSU "Dance Team" is also part of the Defendant's Spirit Program. Like the Cheer Team, the Dance Team performs in connection with athletic events, community events, and other sports-related activities.

6. The individual Defendant, Benjamin Schreiber, is and for ten (10) years or more has been employed by the Defendant OSU as the Head Cheerleading Coach. In that capacity, Schreiber is the most senior management employee directly associated with the Cheer Team. In his capacity as Head Cheerleading Coach, Schreiber is in position to direct, control and influence decision-making and the treatment of OSU staff associated with the Cheer Team, including the Plaintiff while she was employed as an assistant cheerleading coach.

7. The individual Defendant, Carey Hoyt, is an employee of OSU. At all relevant times, Hoyt has held the position of Sports Administrator in the OSU Athletic Department, and, as such, has had administrative management responsibilities with respect to numerous OSU varsity sports, including the Cheer Team, the Dance Team, and other aspects of the Spirit Program. Hoyt also serves and has served during her employment as the Athletic Department's administrative head of the Eugene D. Smith Leadership Institute, which is a program developed and maintained by OSU for the development of student athletes. In her various capacities, Hoyt has been in a position to direct, control and influence the direction and control of decision-making within the OSU Athletic Department, including, significantly, personnel decisions with respect to employees, including the Plaintiff. Among other things, at all times relevant hereto, Hoyt has been the direct supervisor of Schreiber.

**JURISDICTION AND VENUE**

8. Subject matter jurisdiction of the federal statutory claims asserted in this action is proper under 28 U.S.C. § 1331. This Court has subject matter jurisdiction of Plaintiff's state statutory and common law claims under principles of supplemental jurisdiction.

9. Venue is proper in this Court under 28 U.S.C. § 1391 because the Defendants reside or are otherwise found in this judicial district, and all material events giving rise to Plaintiff's claims occurred in the Southern District of Ohio.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. As to Plaintiff's claims based upon unlawful discrimination and retaliation against the Plaintiff in violation of Title VII of the federal Civil Rights Act, and the Plaintiff's claims under the Ohio Human Rights Act, Plaintiff has exhausted statutory administrative remedies by the timely filing of a charge with the Ohio Civil Rights Commission which was cross-filed with the federal Equal Employment Opportunity Commission. Her charge has been closed by both agencies. "Right to Sue" letters have been issued. True and correct copies are attached hereto as Exhibits 1a and 1b, respectively.

## BASIC FACTUAL ALLEGATIONS

**I.** **Plaintiff's Advocacy for African-American Women Employees at OSU**

11. For the ten (10) years that Plaintiff worked for Defendant OSU as an assistant coach of the Cheer Team, she was a diligent, capable, and hard-working employee.

12. During her period of employment, Plaintiff gained a reputation as an outspoken advocate for the employment-related advancement of African-American Athletic Department employees, particularly African-American women. For several years, Plaintiff served on a committee, known as the Buckeye Inclusion Committee, which was formed for the purpose of improving the upward employment mobility of African-American employees at OSU, and its Athletic Department. In May 2022, Plaintiff was selected to become the Athletics Diversity and

Inclusion Designee ("ADID"), and also assume the position of Chair of the Buckeye Inclusion Committee. She was awarded a salary increase for assuming these responsibilities. She won awards, and was nominated by Defendant OSU's Athletics Department for the NCAA's "Champions of Diversity and Inclusion" honor.

13. In addition to the aforementioned formal roles that she assumed, Plaintiff was an acerbic commentator on the underrepresentation of African-Americans, particularly African-American women, in senior management positions within the OSU Athletic Department. During 2020 through 2022, there were thirty-eight (38) varsity team head coaches employed at OSU, only two (2) of whom are African-Americans, and those two (2) are males. There were no African-American women employed as head coaches at OSU.

14. Similarly, during 2020 through 2022, among the senior administrative staff employed in the OSU Athletic Department, there was only a single African-American employed at the level of director or above, and that individual is a male. There were no African-American women employed within the OSU Athletic Department in the position of director or above director during that time period.

15. The Plaintiff commented extensively and persistently with co-workers and management at OSU regarding the above-described data. Among other things, she communicated about the underrepresentation of African-Americans in the Athletic Department with Eugene Smith, the then Athletic Director. In particular, the Plaintiff urged Mr. Smith to take action to improve the upward mobility of African-American women in senior management-level positions in the Athletic Department.

II. **Discriminatory Animus Toward the Plaintiff**

16. The Plaintiff believes and avers that her advocacy regarding the underrepresentation of African-American women, as hereinabove described, engendered ill will

{L0886994.1 } 5

and recrimination on the part of Plaintiff's immediate supervisor Schreiber and his supervisor, Hoyt, both of whom harbor a discriminatory animus toward African-American women. As a direct and proximate consequence of their discriminatory animus, both Schreiber and Hoyt subjected the Plaintiff to hostile treatment, discrimination, race and gender-based harassment. And when she complained, they subjected her to retaliation for her complaints based on the discriminatory treatment.

17. Both Hoyt and Schreiber have displayed their discriminatory animus toward African-American women on numerous occasions, in diverse contexts. Hoyt has acted to impair the opportunity of several African-American women to apply for attractive positions that have opened within the Athletic Department, and specifically, within the Eugene D. Smith Leadership Institute, in order to favor the appointment of white applicants to those positions. In particular, as to the Plaintiff, in June of 2022, the Plaintiff believes and avers that Hoyt prevented the posting of a position called "Spirit Program Coordinator", specifically so that the Plaintiff would be uninformed and unable to apply therefor, so as to facilitate the appointment of Melissa McGhee, who at the time served as a part-time coach of the OSU Dance Team. Hoyt facilitated the appointment of Ms. McGhee as hereinabove described, favoring her over the Plaintiff, even though the Plaintiff possessed far better credentials than Ms. McGhee, and did so as a proximate result of her discriminatory animus toward the Plaintiff because she is an African-American woman, and she had made herself an advocate for African-American female employees of OSU.

18. Over a period of years, beginning before and continuing after Hoyt facilitated the appointment of Ms. McGhee to the position of Spirit Program Coordinator, Hoyt began a concerted pattern of undermining the Plaintiff's scope of responsibility by transferring important functions previously performed by the Plaintiff to Ms. McGhee. These included, but are not limited to, ordaining that Ms. McGhee would be the Dance Team representative authorized to travel to post-

season OSU football games; permitting Ms. McGhee to coordinate and direct the Dance Team performances at various events; and creating a direct line of report between Ms. McGhee and herself, instead of requiring Ms. McGhee to report through Schreiber. These various administrative changes were specifically designed and intended by Hoyt to diminish the role and significance of the Plaintiff, while at the same time aggrandizing the role and responsibility of Ms. McGhee. Hoyt engineered the transfer of responsibility as a consequence of her animus toward Plaintiff as an outspoken African-American woman, and in order to express her preference for Ms. McGhee, because Ms. McGhee is white.

19. Schreiber, too, frequently and blatantly manifested his discriminatory animus toward the Plaintiff because of her race, her gender and her devotion to religious observance, during cheerleading practices, staff meetings, and other encounters.

20. During an August 2023 cheerleading practice, Schreiber was positioning female members of the Cheer Team, and in the process flippantly remarked that the "blonde" female cheerleaders should be positioned in the front of the formation, while "brunette" female cheerleaders should be placed towards the back of the formation. The Plaintiff, of course, chastised Schreiber for his remark, because all of the African-American cheerleaders were brunette, and, consequently, the remark was blatantly racist and offensive. Schreiber belligerently replied: "Show me where I can't say that."

21. Evidently the Plaintiff's confrontation of Schreiber about his remark described in Paragraph 20 above engendered especial hostility on his part toward the Plaintiff. Thereafter, but in August 2023, an incident occurred in which Schreiber borrowed keys from the Plaintiff, used them, and when asked by the Plaintiff to return them, threw the keys emphatically onto the floor, requiring the Plaintiff to go and retrieve them. Schreiber's behavior was deliberately intended by

him to demean the Plaintiff, intimidate her, and demonstrate retaliation against her for having corrected him about a clearly inappropriate racial remark.

22. In 2023, Schreiber, like Hoyt, acted in such a way as to diminish the Plaintiff's significance, scope of responsibilities and functioning as the Cheer Team assistant coach. In January 2024, Schreiber surreptitiously conducted a Cheer Team survey, without revealing the same to the Plaintiff, and while the Plaintiff was out of the country on vacation to Africa. Schreiber did so in order to undermine the Plaintiff in her role as Cheer Team assistant coach, because of his animus against her based upon her gender and race.

23. During the same time period, Schreiber deliberately excluded the Plaintiff from email communications to others within the Spirit Program, athletes and staff, again, because of his gender and race-based animus.

24. Plaintiff has reason to believe that Schreiber similarly scheduled and conducted meetings with others regarding the Cheer Team, and purposefully excluded the Plaintiff so as to undermine her stature, authority and the effectiveness of her functioning as an assistant coach.

25. Plaintiff believes and avers that unbeknownst to her, Schreiber criticized the Plaintiff for departing Cheer Team practices and events, even though Schreiber had been given prior notice and an explanation for the departure, and had, in fact, approved the same. Schreiber lodged these secret, unfounded, defamatory accusations in order to undermine the Plaintiff and expose her to castigation within the Athletic Department.

26. In February 2024, Schreiber published an updated Cheer Team practice schedule, emailed it to Cheer Team members, but deliberately did not provide the updated schedule to the Plaintiff. The Plaintiff discovered that an updated Cheer Team practice schedule had been distributed, and on or about February 15, 2024, confronted Schreiber about having done so. Schreiber responded hostilely, admitted to deliberately having withheld the updated schedule from

the Plaintiff, and snapped at her: "You're doing your own thing." The Plaintiff believes and avers that he did so out of an animus toward her, and with a purposeful intent to undermine her in her role as an assistant coach.

27. During the same time period, Plaintiff attended a coaches' meeting, during which she asked Schreiber about dates that had been scheduled for an important activity conducted by the OSU Athletic Department called "Camps and Clinics". Plaintiff asked about the scheduling because of her enthusiasm to participate in "Camps and Clinics" events. Schreiber falsely told her that the only sessions of "Camps and Clinics" were scheduled to be held in July 2024, and he deliberately withheld information known to him about "Camps and Clinics" sessions that had been scheduled during April, May and June 2024. Schreiber withheld that information to exclude the Plaintiff from participation in that important campus activity, again, because of the animus that he held toward her because of her race and gender.

28. Plaintiff became so anxious over the barrage of harassment and hostility directed at her by Schreiber that she began to suffer emotional and psychic distress. Seeking to put an end to Schreiber's pattern of harassment, on February 15, 2024, Plaintiff reported Schreiber's misconduct to Krissy Mullins, a Human Resources employee in Defendant's Athletics Department. She took no action, and referred the Plaintiff to OSU's campus Employee Labor Relations Human Resources Department.

29. On February 20, 2024, Plaintiff met with Jennifer Dewitt, an employee in Defendant's campus Human Resources Department. She recounted to Ms. Dewitt the conduct that Schreiber had displayed, and she expressed her view that it was motivated by racial, gender-based discriminatory animus. She also related the preferential treatment of Ms. McGhee described above, and attributed that to Hoyt's discriminatory attitude toward her because she is a black woman.

30. The Plaintiff believes and avers that Schreiber, and probably Hoyt as well, were made aware of her reports to Ms. Dewitt. On February 21, 2024, Plaintiff had an acrimonious encounter with Schreiber. Schreiber readily conceded that he harbored animosity toward the Plaintiff. He falsely attributed his rancor to conduct on the part of the Plaintiff, including, specifically, an incident that had occurred on January 10, 2024 in which Plaintiff and eight (8) members of the Cheer Team left a men's basketball game at halftime, in order to conveniently travel to a scheduled activity the next morning. Schreiber castigated the Plaintiff for her early departure, even though Schreiber had been notified of the plan a month earlier, and had specifically approved it.

31. Subsequent to the acrimonious exchange on February 21, 2024, and in obvious retaliation for the Plaintiff having complained to Human Resources, Schreiber persisted in directing hostility toward the Plaintiff. On February 23, 2024, Schreiber encountered the Plaintiff in the Athletic Department, but deliberately ignored her. When Plaintiff greeted him, he loudly recriminated against her, attributing his ire to a remark she had made to him the day prior.

32. On March 28, 2024, Plaintiff met with Hoyt, pursuant to a suggestion made by Ms. Dewitt when they met on February 20, 2024. Plaintiff related the harassing and hostile conduct that had been exhibited by Schreiber, including the throwing of the keys in August 2023, the inappropriate comment made by Schreiber about the hair color of female cheerleaders, and other incidents of harassment and recrimination directed at her by Schreiber.

33. Rather than responding appropriately to the Plaintiff's good faith report of discriminatory and retaliatory conduct on the part of her supervisor, Hoyt decided instead to double-down on Schreiber's unlawful conduct. In retaliation for Plaintiff having made complaints of discrimination and recrimination against her based upon her race and gender, on April 2, 2024, Hoyt caused to be issued to the Plaintiff a document called "Performance Improvement Plan"

("PIP"), a true and correct copy of which is attached hereto as Exhibit 2. The PIP contained a litany of false statements and unfounded criticisms of the Plaintiff's conduct and performance. The document was designed to create a pretextual foundation to discharge the Plaintiff from her employment. The document was designed to create a false record of misconduct on the part of the Plaintiff, all in an effort to retaliate against her for having lodged good faith complaints about discriminatory and retaliatory conduct directed toward her.

34. The PIP states "[w]e have met several times to discuss concerns with your performance on 1/30/24, 2/5/24, and 2/21/24." That assertion is utterly false. In fact, no such meetings ever occurred.

35. The PIP falsely accuses Plaintiff of poor performance in numerous respects, including "scheduling conflicts, low practice engagement, loss of trust"; and "under-developed coaching techniques (stunting)"; and "tone, attitude, and approach can be demeaning as noted by student-athletes." These castigatory accusations are unfounded; they are conjured and hypothecated to place Plaintiff in a poor light.

36. The PIP faulted Plaintiff for having departed a men's basketball game at halftime on January 10, 2024, asserting that the early departure was "contrary to any decision previously made by the program." In fact, Schreiber had been notified ahead of time about the Plaintiff's plan to depart early with several members of the Cheer Team, in order to attend a cheerleading event elsewhere the next day, and had expressly approved her doing so.

37. The PIP falsely stated that Plaintiff had exhibited underdeveloped coaching technique. To the contrary, Plaintiff had consistently exhibited excellent technique over ten years of her employment as an assistant coach, and had never been criticized.

38. The PIP falsely stated that Plaintiff's "[t]one, attitude, and approach can be demeaning as noted by student-athletes." Quite to the contrary, for the entire ten (10) year period

in which she had been the assistant coach of the Cheer Team, Plaintiff's rapport with the members had been outstanding. Her relationships with most of the members remained outstanding, notwithstanding Schreiber's barrage of efforts to undermine her.

39. In a veiled effort to lay groundwork to further erode Plaintiff's status, standing and scope of responsibility, the PIP directed that Plaintiff "focus on her core responsibilities and essential functions of her job". The PIP made the demeaning direction "to learn from the head coach" and "commit full attention and positive energy to supporting the head coach"; notwithstanding that Schreiber had repeatedly expressed a hostile indignation toward the Plaintiff. Finally, the PIP deceptively asserted that the Plaintiff should make efforts "to regain trust and improve communication with staff and student-athletes"; even though the Plaintiff held the trust of all those with whom she interacted, other than Hoyt and Schreiber.

40. In addition to the litany of false and demeaning remarks addressed to the Plaintiff, the PIP also sought deceptively to counter the Plaintiff's complaints of discrimination and retaliation lodged against Schreiber, by intimating that they were motivated by his falsified dissatisfaction with her attitude and performance.

41. Similarly, the PIP directed Plaintiff to meet with Schreiber weekly for thirty (30) days to "evaluate the status of [her] performance relative to the expectations outlined above" and, in an obvious effort to both silence the Plaintiff's complaints about Schreiber's discriminatory behavior and to set the stage for termination of the Plaintiff's employment, the PIP warned that she could be terminated if her performance did not show "immediate improvement".

42. The issuance of the PIP constituted an act of blatant retaliation against the Plaintiff, and was intended by Hoyt and Schreiber as a reprisal against her because of her long-standing advocacy for African-American women employees, and her complaints to the Human Relations department about discriminatory conduct on the part of Hoyt and Schreiber. Simultaneously, with

that act of reprisal Hoyt removed Plaintiff as the Athletics Diversity and Inclusion Designee, and also removed her as chair of the Buckeye Inclusion Committee. Plaintiff was also threatened by Hoyt with a reduction in her salary.

43. In April 2024, Schreiber added religious-based discrimination to his repertoire of discriminatory treatment of the Plaintiff. At a meeting with the Plaintiff on April 10, 2024, Schreiber complained that Plaintiff had missed practice time in order to attend religious services at her church on Sundays, even though practices were generally not scheduled on Sundays; and on the rare occasion when practices were scheduled on a Sunday, Plaintiff would leave church services early in order to participate.

44. By mid-April 2024, Plaintiff could no longer tolerate the discriminatory and retaliatory treatment to which she had been exposed. During April 15 through 17, 2024 Plaintiff filed two (2) written complaints with the OSU Human Relations Department and its Office of Institutional Equity ("OIE"). These written complaints detailed incidents of discrimination and retaliation by and on the part of Hoyt and Schreiber based upon their race-based and gender-based animus, and Schreiber's demonstrated hostile attitude toward the Plaintiff because of her commitment to Sunday religious observance. True and correct copies of these complaints are attached hereto as Exhibits 3 and 4, respectively.

45. Confronted with an extremely hostile work environment, on April 29, 2024 Plaintiff took a leave of absence to recover her emotional stability. She returned to work on June 10, 2024, whereupon Schreiber continued if not elevated the hostile, belittling and demeaning behavior toward the Plaintiff.

46. During a team meeting, on June 10, 2024 Plaintiff realized that Schreiber had circulated to the Cheer Team a document that set out Policies, Procedures, and a Code of Conduct, attached hereto as Exhibit 5, which included headshots of all staff. For inexplicable reasons,

Plaintiff was not included. Also, during this same meeting, all staff members were introduced to the Team—except Plaintiff.

47. At practices on June 11 and 13, 2024, Schreiber intruded upon and brusquely countermanded instructions given by Plaintiff to cheerleaders, in a clumsy and deliberate effort to undermine her standing and authority, stating abruptly: "I'm the head coach."

48. On June 15, 2024, Plaintiff requested that Schreiber email her a copy of a schedule for a cheerleading clinic, which Schreiber refused, continuing a pattern of repeatedly ignoring her, treating her with hostility, undermining her in front of cheerleading team members, and excluding her from activities; as all a manifestation of discriminatory and retaliatory animus against Plaintiff based upon her race, gender, and religious observance.

49. Finally, the Defendants effectuated the strategy set in motion by the issuance of the PIP on April 2, 2024 to discharge the Plaintiff from her employment for reasons totally grounded in their discriminatory and retaliatory motives, concocting a false "reduction in force" as a pretext. By letter dated June 20, 2024, Plaintiff was notified that "[d]ue to lack of funds and reorganization for efficiency… it is necessary to abolish your current position." The letter absurdly characterized the termination as a "reduction in force under Reduction in Force – Unclassified Staff Policy 9.15." The termination was made effective as of July 22, 2024. A true and correct copy of the pretextual June 20, 2024 termination letter is attached hereto as Exhibit 6.

50. The Defendants' assertion that the termination of the Plaintiff was necessitated by a "reduction in force" is utterly ridiculous. Plaintiff's position as an assistant cheerleading coach was not "abolished", as stated in the June 20 letter, nor was there any "lack of funding" nor any "reorganization". To the contrary, the entire motivation for the discharge was to eliminate the Plaintiff as an employee. In effect, the alleged "reduction in force" was designed to eliminate a single employee—the Plaintiff. The termination was motivated purely by racial and gender-based,

discrimination and reprisal. The Defendants discharged the Plaintiff for her tenacity as an advocate for the rights of African-American women, and her steadfast refusal to be silenced.

51. Naturally, just in time for the scheduled July 22, 2024 end-date of Plaintiff's employment, the Defendant's Human Relations Department and its OIE completed their superficial and partisan investigations of Plaintiff's complaints, and issued obviously partisan reports. Although unearthing substantial evidence supporting Plaintiff's claims of discrimination and retaliation, the Defendant's offices concluded that Hoyt and Schreiber had not transgressed any specific written policies. None of the reports directly addressed the overarching fact that Hoyt and Schreiber had exhibited a history of discriminatory and retaliatory animus against the Plaintiff based on race, religious observance, and gender.

52. In short, the Human Relations Department and OIE handling of the Plaintiff's formal written complaints of discrimination and retaliation constitutes a classic white-wash designed to conceal unlawful conduct on the part of Hoyt and Schreiber.

53. As a direct and proximate result of the discrimination and retaliation practiced against her, the Plaintiff has suffered harm and injury, including the following:

    A. She has lost earnings;

    B. She will experience a loss of earnings in the future;

    C. The prospects of her reemployment have been substantially impaired if not destroyed;

    D. She has endured and will continue to endure humiliation, embarrassment, psychic pain and distress;

    E. Her personal and professional reputation has been impaired; and

  F.  She has incurred and will continue to incur costs and expenses to remedy the Defendants' unlawful conduct, including but not limited to reasonable attorneys' fees and costs of suit.

## COUNT I
### *Discrimination by OSU in Violation of Title IX*

54. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

55. Defendant is an entity governed by Title IX because it is a public education program, which receives financial assistance from the United States government.

56. Title IX prohibits sex and gender-based discrimination, retaliation and retaliatory harassment in education programs or activities that receive federal financial assistance; including discrimination and/or retaliation in employment.

57. Title IX has been construed by the Supreme Court to authorize private parties to seek monetary damages for violations of Title IX.

58. The Defendants and each of them intentionally discriminated against Plaintiff on the basis of sex and gender in violation of Title IX in all of the respects herein alleged.

59. The Defendant, OSU, was made aware of the harassment, recrimination, and retaliation directed against the Plaintiff by the Defendants Hoyt and Schreiber, and failed to take reasonable action to put a stop to their unlawful conduct.

60. As a result of the unlawful discrimination perpetrated by Defendants, the Plaintiff has suffered harm and injury hereinabove set forth.

WHEREFORE, Plaintiff Siobhan St. John hereby demands judgment for compensatory damages, such equitable relief as the Court shall deem appropriate, attorneys' fees and costs, and such other relief as the Court deems appropriate.

## COUNT II
### *Discrimination by OSU in Violation of Title VII*

61. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

62. Defendant is an "employer" as defined by Title VII at 42 U.S.C. § 2000e(b).

63. Plaintiff was an "employee" as defined by Title VII at 42 U.S.C. § 2000e(f).

64. Defendant has subjected Plaintiff to unlawful discrimination in employment based upon race, gender and religion in violation of Title VII, specifically 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 2000e-3(a) as hereinabove set forth. The Defendant, OSU, was made aware of the acts of discrimination and retaliation perpetrated by Hoyt and Schreiber, *inter alia*, by and through failing to take action with respect to Plaintiff's complaints with the Human Relations Department and the OIE.

65. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered the injury and harm described herein.

66. Defendants' actions were willful, wanton, malicious, reckless and intentional, and thus warrant the imposition of punitive damages.

WHEREFORE, Plaintiff Siobhan St. John hereby demands judgment for compensatory and punitive damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems appropriate.

## COUNT III
### *Discrimination by OSU, Hoyt and Schreiber in Violation of the Ohio Human Rights Act*

67. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

68. The actions of the Defendants described herein constitute unlawful discrimination, harassment and retaliation in violation of the Ohio Human Rights Act, Ohio Revised Code § 4112.02.

69. As a direct and proximate result of the Defendants' violation of §4112.02, the Plaintiff has suffered the injuries hereinabove set forth.

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages against Defendants, and each of them, attorneys' fees and costs of suit.

## COUNT IV
### *Wrongful Discharge*

70. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

71. The termination of the Plaintiff's employment on June 20, 2024 violated the well-articulated public policy embodied in the Ohio Human Rights Act to prohibit unlawful discriminatory conduct towards persons of protected classes.

72. Termination of the Plaintiff was intended by the Defendant to retaliate against the Plaintiff for her protected complaints made to Defendant's Human Resources Department, which violates the public policy of Ohio.

73. As a consequence of the foregoing, the termination of the Plaintiff, for filing complaints regarding unlawful discrimination and retaliation, was wrongful, tortious, and unlawful under applicable Ohio law.

74. As a direct and proximate result of the Defendant's wrongful discharge as aforesaid, the Plaintiff has suffered the harm and injury as set forth in Paragraph 53 above.

75. To the extent that the evidence demonstrates that the conduct of the Defendant in terminating the Plaintiff was malicious, oppressive, wanton, willful, reckless or manifested a

criminal indifference to civil obligations affecting the rights of others, Plaintiff asserts a claim for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages, attorneys' fees and costs of suit.

Respectfully submitted,

Date: March 14, 2025

By: *[signature]*
Elizabeth E. Deemer, Esquire
OH I.D. #38603
*edeemer@levicofflaw.com*
The Levicoff Law Firm, P.C.
4 PPG Place, Suite 200
Pittsburgh, PA 15222
412-434-5200

*Counsel for Plaintiff*