IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| SIOBHAN ST. JOHN, | : | CASE NO.   2:25-CV-00251 |
| | : | |
| Plaintiff, | : | HON. JUDGE WATSON |
| | : | |
| vs. | : | |
| | : | |
| THE OHIO STATE UNIVERSITY, *ET AL.*, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT THE OHIO STATE UNIVERSITY'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COMES Defendant The Ohio State University ("OSU", unless otherwise noted), by and through its counsel Roetzel and Andress, LPA, and moves to dismiss Plaintiff, Shiobhan St. John's Complaint, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Counts III and IV of Plaintiff's Complaint are barred by principles of sovereign immunity and statutory immunity as embodied in the Eleventh Amendment of the United States Constitution and Ohio Law, respectively.  Counts I and II of Plaintiff's Complaint fail to state any cause of action under Title IX of The Education Amendments of 1972 ("Title IX"), and Title VII of The Civil Rights Act of 1964 ("Title VII"). The grounds for this Motion are fully set forth in the attached Memorandum of Law.

Respectfully submitted,

DAVID YOST
Attorney General State of Ohio

By Special Counsel:
ROETZEL & ANDRESS, LPA

/s/ Heather Renée Adams
hradams@ralaw.com
41 South High Street, Suite 2100
Columbus, Ohio 43215

1

P: 614.463.9770
F: 614.463.9792

***Attorney for Defendant The Ohio State University***

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| SIOBHAN ST. JOHN, | : | CASE NO.   2:25-CV-00251 |
| | : | |
| Plaintiff, | : | HON. JUDGE WATSON |
| | : | |
| vs. | : | |
| | : | |
| THE OHIO STATE UNIVERSITY, *ET AL*., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT THE OHIO STATE UNIVERSITY'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COME Defendants THE OHIO STATE UNIVERSITY, CAREY HOYT, and BENJAMIN SCHREIBER (jointly referred to as "OSU" or "Defendants"), by and through their counsel ROETZEL & ANDRESS LPA, and submit their Motion to Dismiss Plaintiff Siobhan St. John's Complaint, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted. In support of their Motion, Defendants state as follows:

**INTRODUCTION**

Plaintiff Shiobhan St. John ("St. John") attempts to bring a four count Complaint against Defendants The Ohio State University (the "University"), Carey Hoyt ("Hoyt"), and Ben Schreiber ("Schreiber").  In Counts I and II, Ms. St. John claims that OSU discriminated against her on the basis of race, gender and religion in purported violation of Title IX of the Education Amendments of 1972 ("Title IX"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). (Compl.). In Count III, Ms. St. John claims that OSU, Ms. Hoyt and Mr. Schreiber discriminated against her, on the basis of race, gender, and religion, in violation of Ohio Revised Code §4112.02. And, in Count IV,

Ms. St. John seeks to assert a wrongful discharge claim under Ohio common law, against OSU, Ms. Hoyt and Mr. Schreiber. (*Id*.)

Counts III and IV of Plaintiff's Complaint, which are asserted under Ohio Law, are not properly before this Court and must be dismissed on the basis of the State of Ohio's Eleventh Amendment immunity and Ms. Hoyt's and Mr. Schreiber's statutory immunity. Counts I and II, which are pursued under federal law, must be dismissed because plaintiff pleads both too little and too much. On the one hand, her Complaint lacks facts sufficient to meet her pleading burden, and on the other hand, her Complaint is comprised of a litany of conclusory statements and attachments that contradict the very claims she seeks to assert. Thus, Ms. St. John effectively pleads herself out of court.

## STATEMENT OF FACTS

OSU hired Ms. St. John, in 2014, as an Assistant Cheerleading Coach. (Compl. at 3, ¶¶ 2-3). Ms. St. John self identifies as a woman, African American, and a devout Christian. (*Id.)* It is a generally known fact that at all relevant times, Eugene Smith, who is African American, served as OSU's Athletic Director. During her employment, Ms. St. John was given increasing levels of job responsibilities, roles, leadership opportunities, and at least one raise. (*Id*. at ¶12). To be sure, in May 2022, OSU awarded Ms. St. John the additional position of Athletic Department Diversity and Inclusion Designee ("ADID"); appointed her Chair of the Buckeye Inclusion Committee, which works on inclusion programs for the athletic department; and increased her pay. (*Id*.). This pay increase resulted in Ms. St. John earning more than her direct supervisor, Ben Schreiber, Head Coach of OSU's Cheerleading Team. (*Id*. & Ex. 3, ECF No. 1-1 at p. 10 (Plaintiff claiming that she feared retaliation, particularly, because she received a higher salary than Mr. Schreiber)). Mr. Schreiber is not African American.

2

**A.  Ms. St. John Began Complaining About Ms. Hoyt and Mr. Schreiber after Being Denied a Promotion for which She Was Not Qualified and Admonished for Engaging in Insubordination.**

In June 2022, one month after assuming the ADID role, Ms. St. John expressed interest in promotion to the Spirit Coordinator position. (*Id*. at ¶17).  The position was awarded, instead, to Melissa McGhee, who was at the time, ***Head Coach*** of OSU's Dance Team. (*Id*. at ¶17). Ms. McGhee is not African American. (Ex. 5, ECF No. 1-1 at p. 23). When Ms. St. John inquired into why she was not given the promotion, Ms. Hoyt explained that only head coaches were eligible for consideration. (*Id*. at Ex. 4, ECF No. 1-1 at p. 17). Ms. McGhee, like Ms. St. John, maintained her position as the Dance Team Head Coach after being promoted to Spirit Coordinator and continued to perform tasks on behalf of the Dance Team. (*Id*. at ¶ 18). After not receiving the promotion to the Spirit Coordinator, in June 2022, Ms. St. John complained to OSU's Office of Institutional Equity ("OIE")[1] about Ms. Hoyt. (Ex. 4, ECF No. 1-1 at p. 17). She also filed OIE complaints against Ms. Hoyt, Mr. Schreiber, and Ms. McGhee for a variety of purported wrongdoings on April 15, 2024, and April 16, 2024 – days after she was placed on a PIP. (*Id*. at Exs. 2-4)

**B.  Ms. St. John Submitted Additional OIE Complaints After She was Admonished for Instructing the Cheer Team to Leave a Men's Basketball Game Early and Subsequently Placed on a Performance Improvement Plan.**

Ms. St. John's April 15, 2024 OIE complaint did not allege race, gender, or religious discrimination. Rather, she ascribed the "hostile work environment," purportedly caused by Ms. Hoyt and Mr. Schreiber, to a "***misunderstanding***" concerning a January 10th Men's Basketball game. (Compl. at Ex. 3, ECF No. 1-1, p. 8). In her April 15, 2024 OIE complaint, Ms. St. John explained that Mr. Schreiber and Ms. McGhee had met with her on January 30, 2024 and February

---

[1] The Office of Institutional Equity's name has since been changed to the Civil Rights Compliance Office.

21, 2024, to discuss their concerns with her job performance. Particularly, Ms. McGhee and Mr. Schreiber were concerned with her decision to instruct the Cheerleading team to abandon a men's basketball game at half time. (*Id*. at ¶ 30 & Ex. 3, ECF No. 1-1 at p. 8). Mr. Schreiber explained that he believed Ms. St. John made this decision without permission and viewed her actions as "insubordination." (*Id*. at Ex. 3, ECF 1-1 at p. 8). Mr. Schreiber also told Ms. St. John that he was upset that she had claimed that he authorized her to make this decision because that was not true. (*Id.*).

Ms. St. John claimed that after this "***misunderstanding***," Mr. Schreiber and Ms. Hoyt began "bullying" her by excluding her from team e-mails; ignoring her during cheer practices; conducting a cheer team survey without her knowledge or involvement; not informing her of changes to the Cheer team's schedules and practice plans; placing her on a PIP; and reallocating her DEI job duties to another colleague while on the PIP. *(Id*. at ¶¶ 30-33 & Ex. 3, ECF No. 1-1 at pp. 8 - 10). Ms. St. John also asserted that:

- in June 2022, she was unfairly overlooked for promotion to the Spirit Coordinator position in favor of Ms. McGhee;
- Ms. McGhee's elevation to Spirit Coordinator was done to diminish Ms. St. John's role;
- in February 2023, Ms. St. John's job duties were removed and transferred to the newly created Director of Operations position;
- on February 17, 2023, Ms. McGhee discouraged Ms. St. John from applying for the Director of Operations role;
- in August 2023, Mr. Schreiber threw keys at Ms. St. John; and
- in August 2023, Mr. Schreiber remarked that the "blond" female cheerleaders should be positioned in the front of a formation and the "brunette" female cheerleaders should be positioned in the back.

(Compl. at ¶¶ 17-21, 32 & Ex. 3, ECF No. 1-1 at pp. 8-10).

Ms. St. John submitted another OIE complaint on April 16, 2024. (*Id*. at Ex. 4, ECF No. 1-1 at pp. 16-18). This complaint repeated previously asserted concerns but, instead, attributed Ms. Hoyt's and Mr. Schreiber's response to race discrimination, rather than a "misunderstanding".

4

(*Id.*). OIE investigated all of Ms. St. John's complaints and found them to be unsubstantiated. (Compl. at ¶ 51).

### C. Ms. St. John Filed an EEOC Charge After the June 22, 2024 Elimination of Her Position.

On June 20, 2024, OSU notified Ms. St. John that due to a lack of funds and a reorganization the Assistant Cheer position would be eliminated, effective July 22, 2024. (Compl. at ¶¶ 49-51 & Ex. 6, ECF No. 1-1 at p. 50). Neither Mr. Schreiber nor Ms. Hoyt were signatories of, or parties carbon copied on, this notice of termination. Approximately four months later, Ms. St. John filed an EEOC Charge alleging that she had been subject to unlawful discrimination since 2020. (Def.'s Ex. A).[2]

### LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a case will be dismissed if the court lacks the statutory authority to hear and decide the dispute. Fed.R.Civ.P. 12(b)(1). Ohio federal courts have routinely acknowledged, "[w]here subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Id*. (citations omitted). If, taking as true all facts alleged by the plaintiff, the court is without jurisdiction, the motion to dismiss must be granted. *Id.*

Federal Rule of Civil Procedure 12(b)(6) similarly allows for pretrial dismissal of a complaint. A motion to dismiss under Rule 12(b)(6) may be granted only if it appears beyond doubt

---

[2] In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12, a court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Worcester v. Stark State Coll.,* No. 5:18-CV-1704, 2019 WL 3006429, at *2 (N.D. Ohio July 10, 2019) *citing Bassett v. Nat'l Coll. Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Here, Ms. St. John's EEOC Charge of Discrimination is central to the claims asserted in her Complaint.

that the Plaintiff can prove no set of facts in support of her claims, which would entitle her to relief. *See, Westlake v. Lucas,* 537 F.2d 857,858 (6th Cir. 1976). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A plaintiff's obligation to provide the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); See also *McReynolds v. Merrill Lynch & Co., Inc*., 694 F.3d 873, 885 (7th Cir. 2012) (explaining that "although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion").

## ARGUMENT

I.  **COUNTS III AND IV OF PLAINTIFF'S COMPLAINT MUST BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) FOR WANT OF SUBJECT MATTER JURISDICTION.**

   A.  **This Court Lacks Subject Matter Jurisdiction to Consider State Law Claims Brought Against The Ohio State University.**

As an initial matter, Counts III and IV of Ms. St. John's Complaint, which attempt to assert claims for race, gender and religious discrimination and wrongful discharge under Ohio law, against OSU, must be dismissed under Federal Rule of Civil Procedure 12(b)(1). These claims are barred by OSU's Eleventh Amendment Sovereign Immunity. To be sure, plaintiffs may not pursue state-law claims against the State of Ohio, its agencies, and its employees—including universities and university employees—in federal court. *Alexander v. Ohio State Univ*., 2008 U.S. Dist. LEXIS 91490, at *9 (S.D. Ohio Nov. 3, 2008) (holding that OSU is a state instrumentality for Eleventh Amendment purposes and citing cases); *Robertson v. Rosol*, 2007 U.S. Dist. LEXIS 52797, at *9 (S.D. Ohio July 20, 2007) ("it is well-settled within the Sixth Circuit that Ohio's public universities

and colleges are instrumentalities of the State and are, therefore, cloaked by the State's Eleventh Amendment immunity") (citing cases and holding that OSU is entitled to Eleventh Amendment immunity) (citation and internal quotation marks omitted).

"Under the Eleventh Amendment, a State may not be sued in federal court[,]" for claims arising under state law unless the state waives its immunity and consents to suit. See *Latham v. Office of the Attorney General of the State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)); see also *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("an unconsenting State is immune from suits brought in federal courts…"). The Sixth Circuit has repeatedly and consistently held that the State of Ohio has not consented to be sued for state-law claims in federal court. Rather, Ohio has consented to be sued in only one forum—the Ohio Court of Claims, which has exclusive and original jurisdiction. See *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 954 (6th Cir. 1987) (en banc), cert. denied, 487 U.S. 1204 (1988); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir. 1982); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 681 (6th Cir. 1976), cert. denied, 430 U.S. 946 (1977); *Siegler v. Ohio State Univ.*, No. 2:10-CV-172, 2011 WL 3417790, at *2 (S.D. Ohio Aug. 4, 2011)(citing O.R .C. § 2743.02(F)). This well-developed and settled body of case law, therefore, requires the dismissal of Ms. St. John's state law claims against OSU.

**B.    Defendants Hoyt and Schreiber are Statutorily Immune from Liability on Plaintiff's Ohio State Law Claims.**

Ms. St. John's state law claims are also barred by Ms. Hoyt's and Mr. Schreiber's statutory immunity. Whether a state employee is statutorily immune from state law claims is based on whether the employee was acting within the scope of their employment when they caused the alleged injury or harm to the plaintiff. *Boysen v. Holbrook*, No. 06-CV-150, 2007 WL 852198, at

*5 (S.D. Ohio Mar. 19, 2007. Ohio law endows the Ohio Court of Claims with exclusive and original jurisdiction over this determination. *Id*.

To be sure, Ohio Revised Code § 9.86 states, in relevant part, that:

No officer or employee shall be liable in any civil case that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

In addition, Ohio Revised Code § 2743.02(f) provides:

A civil action against a state officer or employee that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to civil immunity under Ohio Revised Code § 9.86 and whether the courts of common pleas have jurisdiction over the civil action.

Accordingly, a federal district court cannot exercise pendent jurisdiction over Ms. St. John's state law claims against Ms. Hoyt and Mr. Schreiber, unless and until, the Ohio Court of Claims has first determined whether they are entitled to immunity. *Haynes v. Marshall*, 887 F.2d 700, 704-5. Because Ms. St. John has not brought the appropriate action in state court to determine the question of statutory immunity, Ms. Hoyt and Mr. Schreiber must be dismissed from this action.

**C.** **There Is No Individual Liability Under Title IX and Title VII, Accordingly, Individual Defendants Hoyt and Schreiber Must Be Dismissed from This Lawsuit.**

To the extent that Ms. St. John seeks to assert Title IX and Title VII claims against Ms. Hoyt and Mr. Schreiber, such claims must be dismissed for lack of subject matter jurisdiction. This is because neither Title IX nor Title VII provide for individual liability. See *Garrett v. Ohio State Univ.*, 60 F.4th 359, 367 (6th Cir.) (holding that "an educational institution is responsible under Title IX only for its 'own official decision[s].'"); see also *Stefanovic v. Univ. of Tennessee*, 935 F.

8

Supp. 950, 953 (E.D. Tenn. 1996) (explaining that the Sixth Circuit and federal appellate courts

across the United States have "squarely rejected individual liability under Title VII").

## II.     PLAINTIFF'S COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).

### A.     Ms. St. John's Title IX and VII Claims, Asserted in Count II of her Complaint, Must Be Dismissed as Time-Barred.

At the outset of this 12(b)(6) analysis, it is critical to highlight that Ms. St. John's race,

gender, and religious discrimination claims against OSU, pursuant to Title IX and Title VII, heavily

rely upon time-barred allegations. Ohio's **two-year** statute of limitations for personal injury claims

applies to Title IX claims, while Title VII claims must be asserted ***within 300 days*** of the alleged

discrete unlawful employment practice. *Snyder-Hill v. Ohio State Univ.,* 48 F. 4th 686, 698 (6th

Cir. 2022)(holding that in Ohio, Title IX claims borrow the two-year statute of limitations

applicable to personal injury claims); citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728-

29 (6th Cir. 1996); See also 42 U.S.C. §2000e-5 (Failure to timely file a Title VII claim result in

the claims being time-barred); *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001) (holding

that 300-day period begins to run from date of alleged unlawful employment practice and affirming

dismissal of Title VII claims based on the failure to file a timely charge).

The time limits for Ms. St. John's Title IX and Title VII claims began to run the moment a

reasonable person, in her same circumstances or in the exercise of due diligence, should have

known that they had been subjected to an unlawful act. *Snyder-Hill* at 698; See also *Nat'l R.R.

Passenger Corp., v. Morgan* 536 U.S. 101, 109 (holding that a discrete discriminatory act occurs

on the day that it happened. "A party, therefore, must file a charge within … 300 days of the date

of the act or lose the ability to recover"). Here, Ms. St. John acknowledges in her April 16, 2024

OIE race discrimination complaint, that she previously complained in June 2022 about "Carey

Hoyt's actions and the ongoing issues [she had] faced since then." (Ex. 4, ECF No. 1-1 at p. 17). Thus, at the latest, the statutory timeframe for Ms. St. John to pursue her claims began to run in June 2022.

1.    <u>St. John's Title IX Claims are Barred by Ohio's Two-Year Statute of Limitations.</u>

Ms. St. John supports her Title IX claim with several time-barred allegations, including that:

- Between 2020 and 2022, there were only two African American male head coaches at OSU, and no African-American women head coaches. (Compl. at ¶ 13).
- Between 2020 and 2022, there was only a single African-American employed at the level of director or above, and that individual is a male. (*Id*. at ¶ 14).
- There were no African-American women employed within the OSU Athletic Department in the position of director or above director during that time. (*Id*.).
- In June 2022, OSU denied her the Spirit Coordinator promotion because she's an African American woman. (*Id*. at ¶ 17).
- In June 2022, OSU promoted Ms. McGhee to Spirit Coordinator and diminished Ms. St. John's role because Ms. St. John is an African American woman. (*Id*.).

These allegations relate to discrete events, the purported occurrence of which, should each have triggered Ms. St. John to file a Title IX lawsuit within two years. Ms. St. John should have pursued claims based on purported events taking place in 2020 by 2022. Purported events arising in 2021 should have been pursued in 2023. And, at the very latest, Ms. St. John should have filed suit on any Title IX claim occurring on or before October 4, 2022, by October 3, 2024. Instead, she waited until October 4, 2024, to file suit. Thus, many of the allegations that comprise her Title IX claim are plainly untimely and should be dismissed. *Amini*, 259 F.3d at 498.

2.    <u>Ms. St. John's Title VII Claims are Barred by the Statute's 300-Day Statute of Limitations.</u>

Title VII's 300-day statute of limitations bars even more claims asserted in Ms. St. John's Complaint, including that:

- In February 2023, OSU further diminished Ms. St. John's role by transferring some of her job duties to a newly created Director of Operations position. (Compl. at Ex. 4, ECF No. 1-1 at pp. 17-18)
- On February 17, 2023, Ms. McGhee discouraged Ms. St. John from applying for the Director of Operations position by telling Ms. St. John that she could not perform both the Assistant Cheer Coach role and the Director of Operations position, but said that Head Mascot Coach, Ray Sharp, who is an African American, male could perform dual positions if he applied for the Director of Operations position. (*Id.* & Ex. 5, ECF No. 1-1 at p. 23)
- In August 2023, Mr. Schreiber remarked that the "blond" female cheerleaders should be positioned in the front of a formation and the "brunette" female cheerleaders should be positioned in the back. (Compl. at ¶20).
- In August 2023, Mr. Schreiber threw keys at Ms. St. John. (*Id.* at ¶21).

Because Ms. St. John did not file an EEOC charge until, on or about October 4, 2024, her Title VII claim must be dismissed to the extent she seeks redress for any alleged incident occurring *before December 9, 2023*—300 days before she filed her charge. (Def.'s Ex. A). The above referenced allegations clearly miss this cutoff and, therefore, should be dismissed.

B.     **Counts I and II of Plaintiff's Complaint Fail to State a Cause of Action for Gender Discrimination Under Title IX and Title VII.**

Notwithstanding time barred claims, any remaining timely allegations are insufficient to set forth a cause of action for gender discrimination under Title IX or Title VII. Title IX is a federal statute designed to prevent sexual discrimination and harassment in educational institutions receiving federal funding. Title IX was enacted to supplement the Civil Rights Act of 1964's ban on racial discrimination in the workplace and in universities. See 20 U.S.C. § 1681(a); see also *Marshall v. Ohio Univ.,* No. 2:15-CV-775, 2015 WL 7254213, at *5 (S.D. Ohio Nov. 17, 2015). Courts analyze Title IX discrimination claims using the same standards as Title VII and apply the burden shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1976). *Waters v. Drake*, 105 F. Supp. 3d 780, 803 (S.D. Ohio 2015).

Accordingly, to survive this motion to dismiss, Ms. St. John must show that she: (1) is a member of a protected group; (2) was subject to an adverse employment decision; (3) was qualified

11

for the position; and (4) was replaced by a person outside of the protected class. *Berry v. Sunrise Home Health Care, Inc*., 21 F. App'x 284, 285 (6th Cir. 2001). Ms. St. John cannot satisfy this standard because: (1) her Complaint is virtually devoid of any reference to her gender or the gender-based discrimination she purportedly experienced at OSU; (2) she effectively pleads herself out of court but asserting multiple non-discriminatory reasons for the adverse employment actions that she experienced; and (3) she has failed to allege that she was replaced by a person outside of her protected classifications or that a similarly situated employee, outside of her protected classifications, was treated more favorably.

       1.    <u>Ms. St. John's complaint is devoid of fact assertions that plausibly suggest she was discriminated against based on her gender.</u>

In her Complaint, Ms. St. John enumerates a slew of perceived slights that she claims are evidence of gender discrimination. These allegations, however, are insufficient to survive a motion to dismiss because they fail to plausibly allege that Ms. St. John was singled out because of her gender. In support of her gender discrimination claim, Ms. St, John alleges that:

- She is female. (Compl. at ¶ 2).
- She was passed over for a promotion that was given to Ms. McGhee – who is also female. (*Id*. at ¶17).
- Her role was diminished such that Ms. McGhee, a former peer, was elevated and Ms. St. John became an indirect report to Ms. McGhee. (*Id.* at ¶¶17-18).
- Ms. Hoyt and Ms. McGhee, who are women, were in roles more senior to Ms. St. John's within the Athletic Department.  (*Id*. at ¶¶ 7, 17-18).
- Ms. McGhee purportedly discouraged Ms. St. John from applying for a Director of Operations position and told Ms. St. John that she could not simultaneously perform the Assistant Cheer Coach role and Director of Operations position, but that Head Mascot Coach, Ray Sharp, who is a black male, could perform dual positions if he applied for the Director of Operations position. (Ex. 4, ECF No. 1-1 at p. 18; Ex. 5, ECF No. 1-1 at p. 23).
- Ms. Hoyt and Mr. Schreiber conducted a Cheer Team survey while Ms. St. John was absent in an effort to undermine her role as Assistant Cheer coach (Compl. at ¶ 22 & Ex. 3, ECF No. 1-1 at p. 8).
- Mr. Schreiber withheld Cheer Team information from and ignored Ms. St. John. (¶¶ 23-27).
- Mr. Schreiber unfairly placed Ms. St. John on a PIP. (*Id.* at ¶ 33).

- OSU's assertion that it was abolishing the Assistant Cheer Coach due to lack of funding is pretext for gender discrimination. (*Id*. at ¶¶ 49-50).

These allegations do not raise an inference of gender discrimination. For instance, Ms. St. John acknowledges that OSU's decision to pass her over for a promotion benefited Ms. McGhee, who is also a woman. Ms. St. John also pleads facts demonstrating that she similarly benefitted from OSU's actions. For instance, she alleges that OSU awarded her the ADID position, she received a salary increase and was paid ***more than*** her male supervisor, Mr. Schreiber. (Compl. at ¶ 12 & Ex. 3, ECF No. 1-1 at p. 10).

Moreover, Ms. St. John's claim that Ms. McGhee purportedly discouraged her from applying for a Director of Operations position and said that Ms. St. John would not be able to simultaneously perform the Assistant Cheer Coach and Director of Operations positions, but that Mr. Sharp could perform dual positions if he applied, does not create an inference of discrimination. (*Id*. at Ex. 4, ECF No. 1-1 at p. 18; Ex. 5, ECF No. 1-1 at p. 23). Ms. St. John fails to allege whether she ever actually applied for the Director of Operations role, that Ms. McGhee was the hiring manager for the role, or that Ms. St. John was qualified or eligible to apply for the position. To be sure, Mr. Sharp is a Head Coach and Ms. St. John was not. Ms. St. John and Mr. Sharp are not similarly situated with respect to their seniority within OSU or qualifications. Ms. St. John has simply alleged too few facts to set forth a plausible claim of gender discrimination.

2. Ms. St. John has effectively pled her gender discrimination claim out of court.

Most notably, however, Ms. St. John effectively pleads herself out of court. A party may plead itself out of court by voluntarily including facts in their complaint that establish an impenetrable defense to their claims and demonstrate that they are not entitled to relief. *Hivner v. Active Elec*., Inc., 878 F. Supp. 2d 897, 905 (S.D. Ohio 2012) citing *Tamayo v. Blagojevich*, 526

13

F.3d 1074, 1086 (7th Cir. 2008) (holding that a plaintiff may effectively plead herself out of court by including in her complaint additional facts that suggest that the defendants' actions were motivated by a non-discriminatory reason).

Here, Ms. St. John has pled that Mr. Schreiber's and Ms. Hoyt's actions toward her were motivated by non-discriminatory reasons that are ***wholly unrelated to her gender***. First, Ms. St. John concedes that the negative treatment and discipline she purportedly received commenced after a "***misunderstanding***" about whether she was authorized to instruct the Cheer Team to leave a January 10, 2024 Men's Basketball game at half time and that Mr. Schrieber considered Ms. St. John's actions to be "insubordination." (*Id.* at Ex. 3, ECF No. 1-1 at pp 8). Second, Ms. St. John states that she feared that Mr. Schreiber would retaliate against her because her salary was higher than his—not because of her gender. (*Id*. at 10). These events suggest that OSU had a legitimate issue with Ms. St. John's performance and that, purportedly, Mr. Schreiber disliked the fact that his subordinate was paid more than him. Without other allegations providing additional gender-based context for these incidents, Ms. St. John has effectively negated her gender discrimination claim.

3.  <u>Ms. St. John has not alleged that she was replaced by a person outside of her protected class or that a similarly situated male employee was treated better.</u>

Ms. St. John has failed to allege that OSU replaced her with a person outside of her protected class. In fact, the 2024-2025 Ohio State Cheerleading Team Guide shows that the Cheer team does not have an Assistant Coach Position. (Ex. 5, ECF No. 1-1 at pp. 23-24). Ms. St. John has failed to allege sufficient facts from which this Court can reasonably infer that she was treated differently because of her gender or that similarly-situated male employees were treated more favorably.

**C. Count II of Plaintiff's Complaint Fails to Set Forth a Cause of Action for Race Discrimination Under Title VII.**

Counts I and II of Ms. St. John's Complaint, which also seek to assert a Title VII race discrimination claim, must be dismissed for virtually the same reasons as her gender discrimination claim. In order to set forth a *prima facie* claim of race discrimination under Title VII, Ms. St. John must allege that: (1) she is a member of a protected class; (2) she was qualified for the position of Assistant Cheer Coach; (3) she met the reasonable expectations of the position; and (4) that OSU treated similarly situated employees outside of the protected class more favorably. *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003). Ms. St. John cannot meet her initial burden because her Complaint is virtually devoid of any timely claims of race-based discrimination, and she has pointed to no similarly situated employee who was treated more favorably.

      1.    <u>Ms. St. John's complaint is devoid of fact assertions that plausibly suggest she was discriminated against based on her race.</u>

Ms. St. John fails to plausibly allege that she was singled out because of her race. At most, she timely alleges that:

- that she is African-American female. (Compl. at ¶1).
- She has reputation as an outspoken advocate for the advancement of African-American Athletic Department employees, particularly African-American women. (*Id*. at ¶12).
- She served on OSU's Buckeye Inclusion Committee, which was formed for the purpose of improving the upward employment mobility of African-American employees at OSU. (*Id.)*
- Between 2020 and 2022 there were no African-American women employed as head coaches at OSU. (*Id.* at ¶13).
- Plaintiff urged Mr. Eugene Smith, the then Athletic Director, to take action to improve the upward mobility of African-American women in senior management-level positions in the Athletic Department. (*Id.* at ¶15).
- Ms. Hoyt and Mr. Schreiber had discriminatory animus toward Ms. St. John and African-American women because Ms. St. John advocated on behalf of African-American women at OSU. (*Id.* at ¶16).
- Ms. Hoyt acted to impair the opportunity of several African-American women to apply for attractive positions that have opened within the Athletic Department, and

15

specifically, within the Eugene D. Smith Leadership Institute, in favor of the appointment of white applicants to those positions. (*Id.* at ¶17).

- In January 2024, Ms. Hoyt and Mr. Schreiber conducted a Cheer Team survey while she was absent in an effort to undermine her role as Assistant Cheer coach (*Id.* at ¶22 & Ex. 3).
- In 2024, Mr. Schreiber excluded Ms. St. John from Cheer team communications, meetings, and withheld information regarding cheer team practices, schedules, camps and clinics and other events. (*Id.* at ¶¶23-27).
- Mr. Schreiber unfairly placed her on a PIP on April 2, 2024. (*Id.* at ¶33 & Ex. 2, ECF No. 1-1 at p. 6).
- OSU eliminated her position as pretext for race discrimination. (*Id.* at ¶¶49-50).

Ms. St. John's generalized allegations of Ms. Hoyt's and Mr. Schreiber's animus toward African Americans, including that they have acted to obstruct the advancement of some unidentified class of African American women within OSU's athletic department, or that they disliked Ms. St. John's advocacy on behalf of African American women, will not save her race discrimination claim. The Sixth Circuit has routinely held that "a legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir.2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Furthermore, even consideration of Ms. St. John's time-barred contentions that between 2020 and 2022, OSU employed only one director-level African American employee and two African American head coaches, fail to establish a plausible inference of race discrimination. These allegations actually ***negate*** Ms. St. John's race discrimination claim. At all relevant times, not only was the head of OSU Athletics—Eugene Smith—African American, but two head coaches were also African American. And, contrary to Ms. St. John's assertions, there is an African American in a Director Level position. Mr. Sharp serves as both the Mascot Head Coach *and* the Director of Operations. Ms. St. John's claim that the presence or absence of African Americans

within the Athletic department is, by itself, is evidence of discrimination is simply unsupported conjecture.

> 2.     Ms. St. John has failed to allege that a similarly situated employee outside of her protected class was treated more favorably.

Ms. St. John points to no similarly situated non-African American Assistant Coaches who was treated more favorably than her. Setting aside the fact that her claims regarding Ms. McGhee's promotion and Mr. Sharp's interest in the Director of Operations position are time barred, even if they were not, these allegations are insufficient to meet this element of Ms. St. John's race discrimination claim. First, neither Ms. McGhee nor Mr. Sharp are similarly situated to Ms. St. John. At all relevant times, Ms. McGhee and Mr. Sharp were Head Coaches, while Ms. St. John was not. (Compl. at Ex. 3, ECF No. 1-1 at pp. 8, 23). Second, Ms. St. John acknowledges in her Complaint that when she asked Ms. Hoyt about Ms. McGhee's promotion to Spirit Coordinator, Ms. Hoyt explained that Ms. St. John was ineligible for consideration because she was not a head coach. (*Id*. at Ex. 4, ECF No. 1-1 at p. 17). Furthermore, Ms. St. John has pointed to no non-black assistant coach who was promoted into a position within the athletic department without meeting the basic qualifications.

Third, Ms. St. John's allegations that Ms. McGhee unlawfully discouraged her from applying for the Director of Operations position ignores the fact that Ms. McGhee purportedly supported Mr. Sharp's consideration for the role. (*Id*. at ECF No. 1-1 at p. 18). Thus, Ms. St. John's reference to Mr. Sharp negates, not bolsters, her claim of race-based discrimination.

**D.     Count II of Plaintiff's Complaint Fails to Set Forth a Cause of Action for Religious Discrimination Under Title VII.**

Ms. St. John has failed to plead any allegations specifically concerning religious discrimination against any of the named Defendants. In total, she pleads that: (1) she is "a devout

Christian;" (2) that Mr. Schreiber complained about her missing Sunday practices to attend religious services at her church; and (3) OSU subjected her to "persistent unlawful; discrimination and harassment," in part, on the basis of religion. (Compl. ¶¶ 1-2 and 43). These allegations are simply too threadbare to plausibly set forth a religious discrimination cause of action in accordance with Federal Rule of Civil Procedure 12(b)(6). Accordingly, Ms. Hoyt and Mr. Schreiber should be dismissed from this action.

## CONCLUSION

For the foregoing reasons, The Ohio State University, Carey Hoyt, and Ben Schreiber respectfully request that this Court dismiss Ms. St. John's Complaint in its entirety and with prejudice, that judgment be entered against Plaintiff and in Defendants' favor, and that Defendants recover their costs and attorney's fees herein, as well as such other relief as may be proper.

Respectfully submitted,

DAVID YOST
Attorney General State of Ohio

By Special Counsel:
ROETZEL & ANDRESS, LPA

/s/ Heather Renée Adams
hradams@ralaw.com
41 South High Street, Suite 2100
Columbus, Ohio 43215
P: 614.463.9770
F: 614.463.9792

*Attorney for Defendant The Ohio State University*

18

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 10, 2025, I electronically transmitted the attached Motion to Dismiss Certain Claims to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties of record.


/s/ <u>Heather Renée Adams</u>